UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISON

| | |
|---|---|
| MICHAEL J.,[1] | ) |
|            Plaintiff, | ) ) ) |
|            v. | )    No. 1:24-cv-02159-SEB-KMB ) |
| FRANK BISIGNANO, *Commissioner of the Social Security Administration*, | ) ) ) ) |
|            Defendant. | ) ) |

**REPORT AND RECOMMENDATION ON COMPLAINT FOR JUDICIAL REVIEW**

Plaintiff Michael J. initially applied for supplemental security income from the Social Security Administration ("SSA") on April 18, 2022, with an alleged disability onset date of February 2, 2022. [Dkt. 8-2 at 19.] His application was denied initially on September 9, 2022, and upon reconsideration on March 14, 2023. [*Id.*] The Administrative Law Judge ("ALJ") conducted a hearing on March 4, 2024. [*Id.*] The ALJ issued his decision on April 23, 2024, concluding that Michael was not entitled to receive disability benefits. [*Id.* at 19-31.] The Appeals Council denied review on October 11, 2024. [*Id.* at 1-6.] Michael timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision. [Dkt. 1.] This matter was referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition of the pending motions.

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

## I.     STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* at 327. "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under this deferential standard of review, an ALJ must provide a logical bridge between the evidence and [his] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotation marks and citation omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).[2] The ALJ must

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning disability insurance benefits and SSI, which are identical in most respects. Cases may reference the section pertaining to disability insurance benefits, such as *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir.

2

evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner] . . . ; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citation omitted). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also

---

2000), *as amended* (Dec. 13, 2000), which cites 20 C.F.R. § 404.1520. Generally, a verbatim section exists establishing the same legal point with both types of benefits. The Court will take care to detail any substantive differences that are applicable to this case.

appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. BACKGROUND

Michael was 42 years old at the alleged onset of his disability in 2022. [Dkt. 8-2 at 30.] He has a high school education and no past relevant work experience. [*Id.*]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) and concluded that Michael was not disabled. [Dkt. 8-2 at 19-31.] Specifically, the ALJ found as follows:

- At Step One, the ALJ found that Michael had not engaged in substantial gainful activity since his alleged onset date of April 18, 2022. [Dkt. 8-2 at 21.]

- At Step Two, the ALJ determined that Michael had the following severe impairments: Heart failure, hypertension, obstructive sleep apnea, obesity, schizophrenia, unspecified depressive disorder, and post-traumatic stress disorder ("PTSD"). [*Id.*]

- At Step Three, the ALJ determined that no listings were met or medically equaled. [*Id.* at 22.]

- After Step Three but before Step Four, the ALJ found that Michael had the RFC to "perform light work as defined in 20 CFR 416.967(b) except stand and/or walk two hours in an eight-hour workday; occasionally climb stairs and ramps; never climb ladders, ropes, or scaffolds; occasional balancing as defined in the Selected Characteristics of Occupations of the DOT; occasional stooping, kneeling, crouching, and crawling; must avoid concentrated exposure to dangerous machinery and unprotected heights; can understand, remember, and carry out simple instructions; no requirement to maintain a production rate pace; no customer service related interaction with the general public; no tandem or team oriented task requiring work in coordination with others; and occasional interaction with co-workers and supervisors." [*Id.* at 24-30.]

- At Step Four, the ALJ determined that Michael had no past relevant work. [*Id.* at 30.]

- At Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Michael can perform. [*Id.*] Accordingly, the ALJ determined that Michael was not disabled at any time between his alleged onset date of April 18, 2022, through the date of the decision. [*Id.* at 31.]

### III. DISCUSSION

Michael contends that the ALJ committed several errors requiring reversal. First, he argues that the ALJ impermissibly made an adverse credibility finding based on his noncompliance with his CPAP machine and his "relatively little treatment" for other severe impairments without questioning him regarding potential reasons for his noncompliance or lack of treatment. [Dkt. 11 at 12-14.] Next, Michael argues that the ALJ impermissibly ignored multiple objective instances of hypersomnolence. [*Id.* at 15-17.] Finally, Michael argues that the ALJ impermissibly discounted Michael's credibility based on his continued smoking of cigarettes and marijuana. [*Id.* at 17-18.] The undersigned's analysis begins and ends with the first issue, as the undersigned believes that issue alone requires reversal of the ALJ's decision.

   A. **The ALJ erred by failing to question Michael at the hearing as to whether there were good reasons for his lack of medical treatment and noncompliance with medical recommendations.**

Michael argues that the ALJ erred because, "[p]rior to drawing a negative inference about a claimant's symptoms and their functional effects from a failure to attain certain treatment, [] the ALJ must first consider any explanations that the individual may provide or other explanatory information in the case record." [Dkt. 11 at 14.] Michael cites SSR 16-3p in support of his argument, which states that the ALJ "may need to contact the individual regarding the lack of treatment, or at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." SSR 16-3p.

The Commissioner argues that "SSR 16-3p does not require an ALJ to ask a claimant about his failure to seek treatment; rather, it provides that an ALJ must *consider* possible reasons for a failure to seek treatment." [Dkt. 13 at 9 (emphasis in original).] The Commissioner contends that an ALJ simply cannot make assumptions about the claimant's noncompliance without asking about

5

the reasons for failing to comply, which the ALJ did not do. [*Id.* at 9-10.] The Commissioner also argues that the ALJ did not find Michael's noncompliance to mean his symptoms were not as severe as alleged, but rather, that noncompliance could have been a contributing factor to Michael's symptoms. [*Id.* at 10.]

In his reply brief, Michael stands on the arguments made in his opening brief. [Dkt. 14 at 1.]

The Seventh Circuit Court of Appeals has held that an ALJ "may deem an individual's statements less credible if medical reports or records show that the individual is not following the treatment as prescribed. However, such evidence should not negatively affect an individual's credibility if there are good reasons for the failure to complete the plan." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citations omitted). "Therefore, an ALJ may need to question the individual at the administrative proceeding to determine whether there are good reasons the individual did not seek medical treatment or fully comply with prescribed treatment." *Id.*; *see Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("An ALJ may need to question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." (citation and quotation marks omitted)); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("The ALJ must not draw any inferences about a claimant's condition from [infrequent treatment or failure to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care."). It is reversible error for an ALJ to make an adverse credibility determination based on a lack of treatment or noncompliance with treatment without determining whether it was justifiable. *See Murphy*, 759 F.3d at 816 (holding that "the ALJ's credibility determination is not supported by substantial evidence" because, among other reasons, "the ALJ

did not ask important questions to determine if [the claimant's lack of treatment and noncompliance with treatment] were justifiable"); *Shauger*, 675 F.3d at 696 (agreeing with the claimant's argument that "the ALJ could not discredit his testimony based on a perception of unexplained gaps in his treatment history" without questioning the claimant about those gaps, which could be caused, for example, by "an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects").

Contrary to the Commissioner's arguments, the ALJ clearly made an adverse credibility determination based on Michael's lack of treatment and noncompliance with recommended treatment for his severe impairments. The ALJ stated, "[t]he claimant's statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent with the objective medical evidence," and then went on to specifically document Michael's "little treatment" for several of his severe impairments. [Dkt. 8-2 at 26.] For example, the ALJ stated that, "[o]ther than his hospitalization in late 2022, the claimant has received relatively little treatment for his cardiac conditions during the relevant period." [Dkt. 8-2 at 27.] But the ALJ did not ask Michael or otherwise examine if there were "good reasons" for the lack of further treatment for his cardiac condition, as is required. *Shauger*, 675 F.3d at 696.

The ALJ also discounted Michael's obstructive sleep apnea, chronic nasal sinus congestion, and obesity because the record "reflects relatively little treatment" regarding those conditions. [Dkt. 8-2 at 27.] But, as with his cardiac condition, the ALJ did not question Michael at the hearing or otherwise examine whether there were "good reasons" for the lack of additional treatment for these conditions.[3] *Shauger*, 675 F.3d at 696.

---

[3] Notably, on the only occasion the ALJ explored a potential reason for Michael's noncompliance, his assessment was flawed. The ALJ noted that evidence in the record suggested that Michael's noncompliance with his CPAP was "difficulty using [it] due to nasal sinus congestion." [Dkt. 8-2

7

In sum, the ALJ discounted Michael's credibility regarding the stated effects of his severe impairments based on a lack of treatment or noncompliance with treatment. [Dkt. 8-2 at 27-28.] The Seventh Circuit has held that, if an ALJ does so, the ALJ must "ask important questions to determine if [the claimant's lack of treatment and noncompliance with treatment] were justifiable," *Murphy*, 759 F.3d at 816, due to, for example, "an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects," *Shauger*, 675 F.3d at 696. *See McHenry v. Berryhill*, 911 F.3d 866, 873 (7th Cir. 2018) ("[A]n ALJ has the burden of inquiry [] when drawing inferences about the severity of a condition from the failure to seek or continue medical care."). The record is clear that the ALJ failed to ask any such questions at the hearing. [Dkt. 8-2 at 33-77.] For this reason, the undersigned recommends that the District Judge reverse and remand the Commissioner's decision in this case.

**B.    Other Arguments**

The Parties disagree about the other issues set forth above. [Dkts. 11 at 15-18; 13 at 11-20; 14 at 1-3.] Having found that it is necessary to recommend remand for the reasons detailed above, the Court declines to substantively address the Parties' remaining arguments. Either Party may raise those arguments on remand if appropriate to do so.

---

at 27; *see id.* at 26 (noting that "the claimant's primary care doctor 'suspect[ed] that [CPAP usage] was made very difficult by his sinus condition'") (citation omitted) (alternations in original)).] But instead of considering this as a legitimate basis for noncompliance, the ALJ appears to have discounted it due to Michael's continued smoking. [*Id.* at 26-27 ("However, the claimant has continued to smoke cigarettes daily (up to 1 pack) and marijuana throughout the relevant period.").] The ALJ should not have relied on Michael's smoking as a basis to undermine his credibility regarding an otherwise legitimate basis for noncompliance with his CPAP. *See Martinez v. Kijakazi*, 71 F.4th 1076, 1082-83 (7th Cir. 2023) (noting that "a claimant's failure to quit smoking is an unreliable basis on which to rest a credibility determination" and is "improper under [Seventh Circuit] caselaw"); *see also Penrod v. Berryhill*, 900 F.3d 474, 478 (7th Cir. 2018); *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000). Even if the ALJ properly determined that there were not good reasons for Michael's noncompliance with his CPAP, the ALJ did not do so with respect to Michael's other severe impairments discussed above.

## IV. CONCLUSION

For the reasons detailed herein, the Magistrate Judge recommends that the District Judge **REVERSE** and **REMAND** the Commissioner's decision that Michael was not disabled. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b). The failure to file objections **within 14 days** after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

**SO RECOMMENDED.**

Date: 12/10/2025

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All counsel electronically registered via CM/ECF